UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL HILL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-CV-01566-CAS-SPM |
| | ) | |
| JAMES HURLEY, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned on the petition of Missouri state prisoner Michael

Hill ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter

was referred to the undersigned United States Magistrate Judge for a report and recommendation

pursuant to 28 U.S.C. § 636(b). For the following reasons, the undersigned recommends that the

petition be denied.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

The instant petition involves Petitioner's convictions in four cases: one case in which

Petitioner was found guilty by a jury, and three cases in which Petitioner pleaded guilty. In case

number 0922-CR05954, Petitioner was found guilty by a jury of illegal sale of a controlled

substance. Resp't Ex. A, at 64 (Tr. 240).[1] He received a sentence of twenty years, without

probation or parole, as a prior and persistent offender. *Id.* at 71 (Tr. 267-68). In case number 22061-

01174, Petitioner pleaded guilty to felony trafficking in the second degree, based on an April 8,

---

[1] Unless otherwise specified, page number references herein are to the CM/ECF pagination in the electrically filed exhibits. For citations to hearing transcripts, the transcript page numbers are indicated in parentheses after the CM/ECF page number.

2006 incident in which he was found in possession of more than two grams of cocaine base. *Id.* at 66 (Tr. 246-48), 69 (Tr. 260). He was sentenced to twenty years on the trafficking charge. *Id.* at 71 (Tr. 268). In case number 022061-01819, which related to an incident on June 3, 2006, Petitioner pleaded guilty to possession of a cocaine base and to possession of marijuana. *Id.* at 66-67 (Tr. 248-49), 69-70 (Tr. 260-61). He was sentenced to ten years on the cocaine possession charge and ninety days on the marijuana possession charge. *Id.* at 71-72 (Tr. 268-69). In case number 0822-CR01161, which related to an incident on February 28, 2008, Petitioner pleaded guilty to possession of a cocaine base as a prior and persistent offender, possession of marijuana under 35 grams, and possession of drug paraphernalia. *Id.* at 67 (Tr. 249-50), 69-70 (Tr. 261-62). He was sentenced to ten years on the possession of cocaine base charge and to ninety days on each of the other charges. *Id.* at 72 (Tr. 269-70). All of Petitioner's sentences were to run concurrently. *Id.* at 72 (Tr. 270).

With respect to Petitioner's three guilty plea cases. Petitioner filed motions for post-conviction relief pursuant to Missouri Supreme Court Rule 24.035; the motions were eventually consolidated into case number 1122-CC-00739. Resp't Ex. H, at 102-132, 133-40. On December 19, 2011, the motion court rejected Petitioner's motion for post-conviction relief with respect to his guilty pleas. Resp't Ex. H, at 133-40. Petitioner appealed the denial (which was assigned case number ED98017), and the Missouri Court of Appeals summarily affirmed the judgment denying the motion for post-conviction relief. Resp't Ex. K.

With respect to Petitioner's jury trial case, Petitioner filed a direct appeal (which was assigned case number ED96068), in which he raised an issue under *Batson v. Kentucky*, 476 U.S. 79 (1986). Resp't Ex. B, at 14. On February 14, 2012, the Missouri Court of Appeals affirmed the judgment of conviction. Resp't Ex. E, at 3-17. On May 30, 2012, the Missouri Court of Appeals

issued its mandate. *Id.* at 1-2. Petitioner filed a petition for writ of certiorari before the United States Supreme Court, which was denied on January 10, 2013. Resp't Ex. F.

On September 5, 2012, Petitioner filed a motion for post-conviction relief related to his jury trial case under Missouri Supreme Court Rule 29.15. Pet'r Ex. D, at 2. The motion was dismissed as untimely. *Id.* Petitioner moved to set aside the order of dismissal, arguing that the motion was only untimely because of errors by the Department of Corrections in advising him as to how much postage was required to mail his motion. *Id.* That motion was denied. *Id.* Petitioner appealed the denial of the motion for post-conviction relief. Pet'r Ex. C, at 1. On March 20, 2013, the Missouri Court of Appeals dismissed Petitioner's appeal "for failure to comply with Missouri Supreme Court Rule(s) 81.12(d) and 81.18 and notice of the Court dated February 27, 2013." Resp't Ex. G; Pet'r Ex. C, at 1. Rule 81.12(d) provides, in relevant part, "Within the time prescribed by Rule 81.19, the appellant shall cause the record on appeal to be prepared in accordance with the provisions of this Rule 81 and to be filed with the clerk of the proper appellate court." Rule 81.18 contains rules for the formatting of documents filed in the appellate court. The notice of the court dated February 27, 2013, is not in any of the parties' exhibits; however, the docket entry for that date states, "Dismissal Notice Sent; Record on Appeal Due March 14, 2013." Pet'r Ex. C, at 1.

On September 18, 2013, Petitioner filed a petition for writ of habeas corpus in Pike County Circuit Court, pursuant to Missouri Supreme Court Rule 91. Resp't Ex. L. On April 15, 2014, that petition was denied. Resp't Ex. M. On May 15, 2014, Petitioner filed a Motion for New Trial and/or to Reconsider Decision, Judgment, Order, and Decree. Pet'r Ex. A, B. As of March 24, 2015, the court had not ruled on that motion. Pet'r Ex. B.

In the instant petition, Petitioner asserts four claims: (1) ineffective assistance of counsel based on his plea counsel's failure to inform him of a plea bargain offer; (2) denial of due process

in that the actions of prison mail room staff prevented him from timely filing a motion for post-conviction relief; (3) ineffective assistance of counsel in that his attorney told him that if he pleaded guilty, the judge would give him a sentence of no more than ten years, to run concurrently with the case where he lost at trial, and failed to tell him that his sentence would not be subject to parole; and (4) ineffective assistance of counsel in that his attorney did not adequately prepare for trial by investigating witnesses and police records.

## II.   LEGAL STANDARDS

### A.  Legal Standard for Reviewing Claims on the Merits

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may not grant habeas relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedents "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of

[the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

### B. Procedural Default

To preserve a claim for federal habeas review, "a state habeas petitioner must present that claim to the state court and allow that court an opportunity to address his claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *accord Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## III.   DISCUSSION

Petitioner asserts four grounds for relief in his petition. The undersigned will address each in turn.

### A. Ground One: Ineffective Assistance of Counsel: Communication of Plea Offer

In Ground One, Petitioner argues that his trial counsel was ineffective for failing to communicate to him the existence of a plea offer that was made to him at some point before his trial in case number 0922-CR05954. Petitioner alleges that the state offered a twenty-year sentence with the possibility of parole in exchange for Petitioner's guilty plea, and that his counsel failed to tell him about it. He asserts that had he known about the offer, he would not have proceeded to trial. Respondent argues that Ground One should be denied because it is untimely, procedurally barred, and meritless. The undersigned will address each argument below.

#### 1.  Timeliness

Respondent first argues that Ground One should be dismissed as untimely because it was not filed within the one-year statute of limitations established under AEDPA. In his reply, Petitioner argues that when the proper tolling rules are taken into account, the petition was timely filed. The undersigned agrees with Petitioner.

AEDPA provides a one-year statute of limitations for habeas corpus petitions. 28 U.S.C. § 2244(d)(1). Failure to file within one year requires dismissal of the petition for a writ of habeas corpus. *See Cross-Bey v. Gammon*, 322 F.3d 1012, 1014-16 (8th Cir. 2003). The limitations period is tolled, however, while a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending. 28 U.S.C. § 2244(d)(2).

Here, the parties agree that the statute of limitations began to run on January 11, 2013, which is the day after the day the United States Supreme Court denied Petitioner's petition for a writ of certiorari under Missouri Supreme Court Rule 91. *See* Resp't Ex. F. The parties also agree that the statute of limitations was tolled beginning on September 18, 2013, when Petitioner filed a petition a writ of habeas corpus in the Pike County Circuit Court. *See Polson v. Bowersox,* 595 F.3d 873, 875 (8th Cir. 2010) (holding that AEDPA's statute of limitation is tolled while a Rule 91 petition is pending in Missouri state court). As of September 18, 2013, 250 days had run on the statute of limitations, leaving 115 days remaining.

The parties disagree, however, about when the tolling ended and the statute of limitations began to run again. Respondent argues that because the state court entered judgment denying Petitioner's Rule 91 habeas petition on April 15, 2014, the tolling of the statute of limitations ended on that date, and the limitations period began to run the next day. Under this view, Petitioner, had 115 days from April 15, 2014 in which to file his habeas petition, making it timely if filed by August 9, 2014.[2]  Respondent argues that because Petitioner did not file the petition until September 11, 2014, it was untimely.

---

[2] Respondent actually states that Petitioner was required to file his habeas petition by August 7, 2014, but it is unclear how Respondent calculated that date based on the dates specified in his brief.

Petitioner argues that the statute of limitations did not begin to run again until the judgment on Petitioner's Rule 91 petition became final, which Petitioner argues was 90 days after Petitioner filed his Motion for New Trial and/or to Reconsider Decision, Judgment, Order, and Decree. Petitioner points out that under Missouri law, a judgment becomes final on "the expiration of thirty days after its entry if no timely authorized after-trial motion is filed." Mo. Sup. Ct. R. 81.05(a)(1). Petitioner also points out that "[i]f a party timely files an authorized after-trial motion, the judgment becomes final at the earlier of the following: (A) Ninety days from the date the last timely motion was filed, on which date all motions not ruled shall be deemed overruled; or (B) If all motions have been ruled, then the date of ruling of the last motion to be ruled or thirty days after entry of judgment, whichever is later." Mo. Sup. Ct. R. 81.05(a)(2). Petitioner attached to his reply documents showing that he filed an after-trial motion on May 15, 2014 (before 30 days had passed and the judgment had become final), and that the court never ruled on the motion. *See* Pet'r Ex. A, B. Thus, Petitioner argues, the judgment did not become final until ninety days from the date that motion was filed—August 13, 2014. At that point, Petitioner, had 115 days in which to file his habeas petition, making it timely if filed by December 6, 2014.

The undersigned finds Petitioner's argument persuasive. In the context of determining when a motion for post-conviction relief ceases to be pending for purposes of tolling AEDPA's statute of limitations, courts routinely apply the time limits in Rule 81.05. *See, e.g.*, *Rodgers v. Steele*, No. 4:13-CV-2000-HEA, 2017 WL 445659, at *3 (E.D. Mo. Feb. 2, 2017) (motion for post-conviction relief was pending and tolled AEDPA's statute of limitations until ninety days after the last authorized post-trial motion was denied by operation of law, ninety days after it was filed). Rule 81.05 applies to a state petition for writ of habeas corpus. *See* Mo. Sup. Ct. R. 91.01 (providing that "proceedings in habeas corpus shall be governed by and conform to the rules of

civil procedure"). Thus, the undersigned finds no reason why Rule 81.05 should not apply to determine when a judgment on a petition under Rule 91 ceases to be pending for purposes of tolling of AEDPA's statute of limitations. The undersigned also notes that another judge in this district recently applied the time limits of Rule 81.05 in making such a determination. *See Reeder v. Koster*, No. 4:14CV-450-SNLJ-DDN, 2016 WL 6127702, at *4 (E.D. Mo. Sept. 8, 2016) (finding AEDPA's statute of limitations was tolled until thirty days after the judgment on the petitioner's state habeas petition, at which time the thirty-day time limit under Rule 81.05 for filing for reconsideration had expired), *report and recommendation adopted*, No. 4:14CV0450 SNLJ, 2016 WL 6124968 (E.D. Mo. Oct. 20, 2016).

Because the undersigned agrees with Petitioner that AEDPA's statute of limitations was tolled from September 18, 2013 through August 13, 2014, the undersigned finds that the instant petition was timely filed.[3] Thus, the undersigned recommends that Ground One not be dismissed as untimely.

### 2. Procedural Default

Respondent next argues that review of Ground One is barred because Ground One has been procedurally defaulted. Specifically, Respondent argues that this claim has been procedurally defaulted because Petitioner failed to timely file his motion for post-conviction relief under Missouri Supreme Court Rule 29.15, and the motion court dismissed his motion as untimely under Missouri law.

---

[3] Because the undersigned agrees with Petitioner's argument, the undersigned does not reach Petitioner's alternative argument: that the Court should adopt the approach of the Second and Ninth Circuits and find that Petitioner's Rule 29.15 motion tolled the statute of limitations because it was timely filed under the federal prison mailbox rule, even though it was not timely filed under state law.

Federal courts may generally not grant habeas relief where a prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). *See also Collier v. Norris*, 485 F.3d 415, 425 (8th Cir. 2007) (the adequate and independent state law doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.") (quoting *Coleman*, 501 U.S. at 729-30); *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004) "[A] state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards.") (citation omitted). To be adequate and independent, "[t]he procedural rule relied upon by the state court must be 'firmly established, regularly followed and readily ascertainable when it was applied.'" *Winfield v. Roper*, 460 F.3d 1026, 1036 (8th Cir. 2006) (quoting *Malone v. Vasquez*, 138 F.3d. 711, 717 (8th Cir. 1998)).

Petitioner appears to acknowledge that Ground One has been procedurally defaulted due to the untimely filing of his motion for post-conviction relief. However, he argues that cause exists to excuse the default, because his late filing was due to errors on the part of the prison mail room officials. He alleges that he took his motion package to the mail room with sufficient time for it to be filed,[4] that the package was weighed by a case manager who informed Petitioner of the required

---

[4] The Missouri Court of Appeals issued its mandate on Petitioner's direct appeal on May 30, 2012. Thus, Petitioner's motion for post-conviction relief was to be filed no later than ninety days later— Tuesday, August 28, 2012. *See* Mo. Sup. Ct. R. 29.15(b). With his reply brief, Petitioner filed a calendar he created indicating that he submitted his mail for weighing on August 23, 2012, and it was returned to him for additional postage on August 27 and again on August 29. Pet'r Ex. E, at 4. The docket sheet indicates that the motion was ultimately filed on September 5, 2012. Pet'r Ex. D.

postage, that Petitioner attached that amount of postage, and that the package was later returned to him for inadequate postage.

Based on Petitioner's allegations, it appears that his "cause" argument may have some merit. In *Ivy v. Caspari*, 173 F.3d 1136, 1140 (8th Cir. 1999), the state court dismissed the petitioner's motion for post-conviction relief as untimely filed. *Id.* at 1139. In his federal habeas petition, the petitioner claimed that there was cause to excuse this procedural default, because the late filing of his motion was caused by the prison mail system's failure to mail a motion that he had prepared and deposited in the prison mail system. *Id.* at 1140. After an evidentiary hearing, the district court found that the petitioner had indeed attempted to mail his properly executed motion five days before it was due, found that the petitioner had established cause and prejudice to overcome the procedural default, and granted the writ of habeas corpus. *Id.* On appeal, the Eighth Circuit affirmed. *Id.* at 1141. It noted that cause is established when "some objective factor external to the defense impedes counsel's efforts to comply with the State's procedural rule." *Id.* at 1140 (quoting *Murray*, 477 U.S. at 491). The court noted that although there was "no evidence that a prison employee deliberately or maliciously purloined the envelope containing the motion," such a showing was not necessary; it was "enough for [the petitioner] to establish, as he has, that the nondelivery of the first petition was not the result of any want of attention on his part to the requirements of the State's filing deadlines." *Id.* at 1141. To the extent that Petitioner's allegations are true, the instant case appears to be similar to *Ivy*. Petitioner alleges that he took his motion package to the prison mail room five days before the motion was due, a case manager weighed his package and told him the specific postage amount to put on the envelope, and he put that amount on the envelope. It is unclear what more Petitioner could have done to effect delivery. If prison officials gave him an incorrect postage amount that caused his motion to be returned, that would

seem to constitute an objective factor external to Petitioner that impeded his efforts to comply with the state rules regarding timely filing.

It appears that resolution of whether Petitioner can establish cause for this default might require an evidentiary hearing to resolve issues such as what actually happened in the prison mail room and whether Petitioner's motion for post-conviction relief actually included the claim in Ground One. However, the undersigned need not resolve this issue. As discussed below, assuming *arguendo* that Petitioner could show cause sufficient overcome this procedural default, this claim is without merit.[5]

---

[5] The undersigned further notes that it appears that Ground One may have been procedurally defaulted for a second, independent reason: the Missouri Court of Appeals' decision not to address the claim in Ground One based on Petitioner's failure to comply with state court rules regarding filing of the record on appeal. After Petitioner's motion for post-conviction relief was dismissed as untimely, Petitioner appealed, and the Missouri Court of Appeals dismissed the appeal "for failure to comply with Missouri Supreme Court Rule(s) 81.12(d) and 81.18 and notice of the Court dated February 27, 2013." Resp't Ex. G; Pet'r Ex. C, at 1. Rule 81.12(d) requires the appellant to cause the record on appeal to be filed with the clerk of the appellate court; Rule 81.18 contains the rules for formatting of documents; and the court's February 27, 2013 notice set a due date for the record on appeal. *See* Pet'r Ex. C, at 1. It appears that the rules requiring filing of the record on appeal are firmly established, were regularly followed, and were readily ascertainable when applied. *See Garris v. State*, 389 S.W.3d 648, 652 (Mo. 2012) ("[I]t is appellant's obligation to prepare and file a record on appeal that incorporates the proceedings showing that the motion court erred") (internal quotation marks omitted); *State v. Dunn*, 817 S.W.2d 241, 244 (Mo. 1991) ("It is appellant's responsibility to prepare a complete record on appeal."). *See also Lynn v. Lombardi*, No. 4:14 CV 428 CDP, 2015 WL 7180500, at *3 (E.D. Mo. Nov. 16, 2015) (finding procedural default where the Missouri Court of Appeals dismissed claims based on failure to comply with Missouri Supreme Court Rule 81.12).

Based on the above, it appears likely that, regardless of whether cause exists to excuse the procedural default at the motion court level, Ground One has also been procedurally defaulted at the appellate court level. However, because Respondent did not raise this defense, the parties have not had the opportunity to address this issue. The Eighth Circuit has held that the district court should not *sua sponte* decide a case based on a procedural default without giving the parties fair notice and an opportunity to present their positions. *See Dansby v. Hobbs*, 766 F.3d 809, 824 (8th Cir. 2014); *accord Deck v. Steele*, No. 4:12-CV-1527-CDP, 2015 WL 5885968, at *2 (E.D. Mo. Oct. 8, 2015). Thus, the undersigned does not rely on this possible procedural default in making its recommendation.

### 3. Merits

Respondent's third argument is that Ground One is without merit. The undersigned agrees.

As discussed above, Petitioner alleges in Ground One that his trial counsel was ineffective for failing to communicate to him the existence of a plea offer that was made to him at some point before his trial in case number 0922-CR05954. Petitioner asserts that at some point, the state offered to resolve all of Petitioner's pending criminal cases (including those to which he pleaded guilty) for a twenty-year sentence with the possibility of parole. In his reply, Petitioner argues that if he had been informed of this plea offer and accepted it, he would have received a twenty-year sentence with the possibility of probation or parole on all of his cases.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, Petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To demonstrate prejudice, a Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In *Missouri v. Frye*, 566 U.S. 133 (2012), the Supreme Court held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 146. The failure to communicate such an offer constitutes deficient performance under *Strickland*. To show prejudice,

the petitioner "must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Id.* at 147.

After review of the record, the Court finds that Petitioner cannot establish either the deficient performance prong or the prejudice prong of *Strickland*, because the record shows that Petitioner knew about the plea offer and discussed it with his attorneys. At the post-sentencing hearing, the trial court and Petitioner had the following exchange:

THE COURT;         Did you tell your lawyers as to the case that went to trial that you wished to go to trial?

THE DEFENDANT: Yes, sir.

THE COURT:         Okay. And I believe that the State had made a plea bargain offer to you, is that right?

THE DEFENDANT: No, sir.

THE COURT:         Somewhere I got the impression that they were offering twenty years with the possibility of parole, is that right?'

THE DEFENDANT: Oh, yeah, they made an offer of twenty.

THE COURT:         And you talked about that with your lawyers?

THE DEFENDANT: Yes.

THE DEFENDANT: Okay. And you instructed your lawyers that you wanted to go to trial on the sale case, correct?

THE DEFENDANT: Right.

THE COURT:         And with regard to—the other case is the one you pleaded guilty. Am I right, the State was offering twenty years on everything? Is that your understanding?

THE DEFENDANT: Yes, sir.

Resp't Ex. A, at 73-74 (Tr. 276-77).

14

The undersigned finds that this record refutes Petitioner's contention that his attorneys never told him about a plea offer of twenty years with the possibility of parole. Petitioner argues that because of Petitioner's original "no" answer, the record is ambiguous and further inquiry is required. The undersigned disagrees. The only reasonable reading of this exchange is that although Petitioner might have forgotten about the plea offer by the time of the sentencing hearing, he remembered it as soon as the court refreshed his memory. He did not merely agree with a statement made by the court, but expressly stated, "Oh, yeah, they made an offer of twenty." In addition, the record makes it clear that he knew there was a plea offer "on everything," not just on a single case. Because the record shows that Petitioner was aware of the offer and discussed it with his lawyers, he cannot show deficient performance or prejudice under *Strickland*.

Petitioner also argues that the record is silent as to how the offer was conveyed to him, and points out that in *Frye*, the Supreme Court noted with approval certain procedures that could be employed to make the record clear that such an offer was conveyed. However, Petitioner points to no authority to suggest that an attorney's failure to convey this information in a particular way constitutes deficient performance under *Strickland*, particularly where the accused acknowledges that he knew about the offer. Nor does Petitioner provide an argument for why there is a reasonable probability that he would have accepted the plea offer had it been conveyed in a different way, such that the failure to convey it in that way prejudiced him.

For all of the above reasons, the undersigned recommends that Ground One be denied.

### B. Ground Two: Denial of Due Process: Prevention of Filing of Motion for Post-Conviction Relief

In Ground Two, Petitioner argues that he was denied due process in that the actions of prison mail room staff prevented him from timely filing a motion for post-conviction relief. Respondent argues that this claim is not cognizable. The undersigned agrees.

"Section 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding." *Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir. 1990). "Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Id.; accord Bell-Bey v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007).

For the above reasons, the undersigned recommends that Ground Two be denied.

### C. Ground Three: Ineffective Assistance of Counsel Based on Inaccurate Advice About Sentencing Prior to Guilty Plea

In Ground Three, Petitioner argues that his plea counsel was ineffective because his plea counsel incorrectly told him that if he pleaded guilty to the three cases in which he pleaded guilty, the judge would give him a sentence of no more than ten years (to run concurrently with the case where he lost at trial). He also alleges that his plea counsel failed to tell him that his sentence would not be subject to parole. He alleges that if he had been properly advised and counseled, he would not have pleaded guilty. Petitioner raised this claim in his amended motion for post-conviction relief under Missouri Supreme Court Rule 29.15, and the motion court denied the claim on the merits. Resp't Ex. H, at 105-06, 139-40. The Missouri Court of Appeals summarily affirmed the denial of the motion. Resp't Ex. K.

As discussed above, to show ineffective assistance of counsel under *Strickland*, Petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." 466 U.S. at 687. In *Hill v. Lockhart*, the Supreme Court applied *Strickland*'s two-part test to ineffective assistance of counsel claims arising in the context of guilty pleas. 474 U.S. 52, 57-59 (1985). To satisfy the first prong, the petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 57. "Judicial

scrutiny of counsel's performance must be highly deferential," and the petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and internal quotation marks omitted). To satisfy the second prong in the guilty plea context, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 131 S. Ct 1388, 1410 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance," *Bell*, 535 U.S. at 698-99. "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

The motion court rejected this claim, finding that Petitioner's assertion that his plea counsel had told him that his sentence would be no more than ten years was "directly refuted by the record." Resp't Ex. H, at 140. The motion court's decision was reasonable and supported by the record. At the plea hearing, prior to the entry of Petitioner's guilty pleas, the court and Petitioner had the following exchange:

THE COURT: All right. So, Mr. Hill, you understand, since you don't have a plea bargain, I'm not required to follow the prosecutor's recommendation. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if I wanted to, I could give you consecutive life sentences in these cases? Do you understand that?

| | |
|---|---|
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you need a minute to collect yourself, Mr. Hill? Are you ready to go forward? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | All right. I just want to be sure you understand what the situation is, Mr. Hill. You have no plea bargain so you're leaving it up to me. You understand that, correct? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | All right. Did anybody make you any promises to get you to plead guilty? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | When I say promises, I mean anything, even a candy bar. |
| THE DEFENDANT: | No, sir. |

Resp't Ex. A, at 68 (Tr. 253-54). Moreover, in discussing the trafficking charge to which Petitioner ultimately pleaded guilty, the prosecutor stated, "As a prior and persistent offender, in this case, the defendant's range of punishment would be ten to thirty years or life in the Department of Corrections without the possibility of parole." Resp't Ex. A, at 67 (Tr. 252). The court stated, "Mr. Hill, you heard the prosecutor describe the range of punishment. Did you understand that?" *Id.* Petitioner responded, "Yes, sir." *Id.* In addition, immediately before Petitioner pleaded guilty to the trafficking charge in case number 22061-01174, the court explicitly asked Petitioner whether he understood that his sentence would be without probation or parole:

| | |
|---|---|
| THE COURT: | Do you understand that in the 1174 case, because you're a prior and persistent drug offender, it's mandatory that you do at least ten years without probation or parole? Do you understand that? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | In fact, any sentence that I impose will be without probation or parole, do you understand that? |

18

THE DEFENDANT:  Yes, sir.

THE COURT:          Did anybody tell you anything differently?

THE DEFENDANT:  No, sir.

Resp't Ex. A, at 69 (Tr. 260).

The above exchanges plainly show that Petitioner understood, before pleading guilty, that the court could sentence him to more than ten years, without the possibility of parole, on the charges to which he ultimately pleaded guilty. In addition, his statement that he was not promised anything in order to plead guilty refutes his contention that his plea counsel assured him that he would receive a sentence of no more than ten years in exchange for pleading guilty.  Thus, he cannot establish that his plea counsel's performance was deficient, and he cannot establish the first prong of *Strickland*.

Similarly, Petitioner cannot satisfy the second prong of *Strickland,* because the record refutes his contention that had his counsel correctly advised him that he could receive a sentence of more than ten years without the possibility of parole, he would not have pleaded guilty. The record plainly shows that at the plea hearing, Petitioner understood that his sentence could be far more severe than that, yet he pleaded guilty anyway. Thus, he cannot show that he would not have pleaded guilty had his counsel told him that he could receive a sentence of more than ten years. *See United States v. Regenos,* 405 F.3d 691, 693 (8th Cir. 2005) (defendant could not show prejudice under *Strickland* based on counsel's alleged failure to inform her about the length of a sentence, where the plea court had explicitly informed the defendant about the length of the sentence and the defendant had testified that she understood the sentence).

For the above reasons, the state court's adjudication of this claim did not involve an objectively unreasonable application of *Strickland* to the facts of this case. Thus, the undersigned recommends that Ground Three be denied.

**D. Ground Four: Ineffective Assistance of Counsel Based on Failure to Prepare for Trial**

In Ground Four, Petitioner argues that his plea counsel was ineffective because his plea counsel failed to adequately prepare for trial—by failing to obtain records from the St. Louis Police Department as requested; by failing to obtain all discovery materials prior to trial; and by failing to contact and consider calling certain witnesses as requested, specifically Shanell Hill. Petitioner argues that but for the above errors by his trial counsel, he would have gone to trial rather than pleading guilty. Petitioner raised this claim in his amended motion for post-conviction relief under Missouri Supreme Court Rule 29.15, and the motion court denied the claim on the merits. Resp't Ex. H, at 103-05, 134-39. The Missouri Court of Appeals summarily affirmed the denial of the motion. Resp't Ex. K.

The motion court first found that Petitioner's assertion that his counsel had failed to contact witnesses and failed to investigate police records as requested was refuted by the record. Resp't Ex. H, at 134-37. That conclusion was reasonable. During the plea hearing, the court and Petitioner had the following exchange:

> THE COURT: So have you told your lawyers all of the facts and circumstances surrounding the crimes with which you are charged?
>
> THE DEFENDANT: Yes, sir.
>
> . . .
>
> THE COURT: Have your lawyers refused to do anything you've asked them to do?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Have they answered all of your questions?
>
> THE DEFENDANT: Yes, sir.

| THE COURT: | Have you had enough time to talk about the cases with your lawyers? |
|---|---|
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you have any complaints or criticisms about your lawyers? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Are you satisfied with their services? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Did they or anybody tell you to lie or withhold any facts from me in this hearing? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Do you know of any witnesses involved in any of these incidents that your lawyers should have talked to before you came in here to plead guilty? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | You do know of some witnesses? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | I just want to make sure that you think they've talked to everybody that they should have talked to. |
| THE DEFENDANT: | Yes, sir. |
| MS. TAFFE: | Judge, Mr. Hill provided us with a list of witnesses for each case. We've talked to every witness that we had contact information for. |
| THE COURT: | Do you agree with that, Mr. Hill? |
| THE DEFENDANT: | Yes, sir. |

Resp't Ex. A, at 68 (Tr. 254-56). In addition, during the post-sentencing colloquy, the court and

Petitioner had the following exchange:

| THE COURT: | Okay. And there were some other witnesses in the other cases that you pleaded guilty to, correct? |
|---|---|

| THE DEFENDANT: | Yes, sir. |
| THE COURT: | And you talked about those people with your lawyers, right? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | And you discussed what they could say and where they could be found, is that right? |
| THE DEFENDANT: | Right. |
| THE COURT: | Do you have any reason to believe that your lawyers did not talk to these people? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Do you know now of anybody that they should have talked to that they did not? |
| THE DEFENDANT: | No, sir. |

Resp't Ex. A, at 73 (Tr. 275-76).

It was not unreasonable for the state court to find that this testimony refuted both Petitioner's assertion that his lawyers failed to contact or consider calling relevant witnesses as he had requested, and his assertion that his lawyers failed to investigate the case by obtaining police records he had requested. Petitioner plainly testified that he discussed possible witnesses with his counsel and that he had no reason to believe that he did not talk to those witnesses; that his lawyers had not refused to do anything he asked; and that he was satisfied with their services. "[A] defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (internal quotation marks omitted). Petitioner offers nothing to overcome the presumption that his statements at the plea hearing were accurate and truthful. Thus, he cannot establish that his counsel's performance was deficient.

The motion court also found that Petitioner could not show that his counsel's alleged errors prejudiced him, because he could not show that absent the errors, there is a reasonable likelihood

that he would not have pleaded guilty. Resp't Ex. H, at 137-38. Based on Petitioner's briefing before the state courts, it appears that Petitioner's argument is that both the police records at issue and the likely testimony of Shanell Hill would have shown that on April 8, 2006 (when he was found in possession of more than two grams of cocaine base, which led to his trafficking conviction), there were multiple individuals at the scene of the crime, and those individuals were searched by the police. *See* Resp't Ex. H, at 109-21. Petitioner argues that this evidence would have undermined the state's position that he was alone at the scene and would have supported his contention that there were men shooting dice in front of his grandmother's porch, and that when he asked them to leave, the police swarmed the area and ran warrant searches on all of the men, including Petitioner. *Id.* Petitioner also suggests that this evidence would have supported his contention that Petitioner was not in possession of the drugs, apparently by supporting the idea that they belonged to someone else at the scene. *Id.* at 119.

The motion court noted that Petitioner had "fail[ed] to show how the supposed information would have materially aided the defense." Resp't Ex. H, at 137. The state court noted that Petitioner had "unequivocally admitted to possession of the illegal drugs in regard to the trafficking charge," and that "[w]hether the police detained other persons at the time is largely irrelevant, given [Petitioner's] admission that he dropped the bag containing the drugs, as asserted by the State." *Id.* at 137-38. The state court also found it "incredible that [Petitioner] or defense counsel would have insisted on going to trial on [the trafficking charge] simply because there was some evidence that there were other persons present at the time of [Petitioner]'s arrest who might have possessed illegal drugs." *Id.* at 139.

The state court's determination regarding the prejudice prong of *Strickland* was not objectively unreasonable. Petitioner admitted on the record that the evidence would show beyond

a reasonable doubt that Petitioner knowingly possessed more than two grams of cocaine base and that police officers saw Petitioner drop a bag on the ground that was found to contain more than two grams of cocaine base. Resp't Ex. A, at 66 (Tr. 246-48). As discussed above, "defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Nguyen*, 114 F.3d at 703. Petitioner offers no explanation for why developing evidence that other individuals were present at the scene of the crime would have led to a reasonable likelihood of him deciding not to plead guilty.

For the above reasons, the state court's adjudication of this claim did not involve an objectively unreasonable application of *Strickland* to the facts of this case. Thus, the undersigned recommends that Ground Four be denied.

## IV. CONCLUSION

For the above reasons, the undersigned finds that Petitioner is not entitled to federal habeas relief. Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner Michael Hill's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that this case be **DISMISSED**.

The parties are advised that they have fourteen (14) days to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of May, 2017.